UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter Ratsamy and 88 Oriental Foods,

            Plaintiffs,                     **MEMORANDUM OPINION AND ORDER**

v.                                     Civil No. 10-975 ADM/JJK

United States of America and United
States Department of Agriculture
through its agency the Food and Nutrition Service,

            Defendants.

_____

William Ford, Esq., Hopkins, MN, on behalf of Plaintiffs.

Ana H. Voss, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On March 31, 2011, the undersigned United States District Judge heard oral argument on Peter Ratsamy ("Ratsamy") and 88 Oriental Foods' (collectively referred to as "Plaintiffs") Motion for Summary Judgment [Docket No. 17] and Defendants United States of America and United States Department of Agriculture ("USDA") through its agency the Food and Nutrition Service's ("FNS") (collectively referred to as "Defendants") Motion for Summary Judgment [Docket No. 9]. For the reasons set forth below, Plaintiffs' Motion is denied and Defendants' Motion is granted.

## II. BACKGROUND[1]

The facts of this case are undisputed. Ratsamy is the owner of 88 Oriental Foods, a

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, any disputed facts are noted.

retail store in St. Paul, Minnesota.  Compl. ¶ 2.  88 Oriental Foods is a participant in the food stamp program, now known as the Supplemental Nutrition Assistance Program ("SNAP")[2] administered by the United States Department of Agriculture's Food and Nutrition Service.  An undercover investigation between February and August 2009 revealed that on six of seven attempted buy occasions, an employee of 88 Oriental Foods sold ineligible items in violation of program regulations.[3]

On August 31, 2009, the USDA issued a Charge Letter notifying Ratsamy that his store was found to have accepted SNAP benefits in exchange for merchandise in violation of 7 C.F.R. 278.2(a).  A.R. [Docket No. 12] at 40.  The letter informed Ratsamy that the violation warranted a six-month disqualification period or, under certain circumstances, a civil monetary penalty in lieu of a disqualification.  Id.  Ratsamy's counsel replied seeking a warning letter as the appropriate sanction for the violation or, in the alternative, a civil monetary penalty in lieu of a disqualification arguing that Ratsamy's wife's ability to speak fluent Thai and cater to the Thai-speaking Burmese refugees was needed in the area.  Id. at 68-69.  In response, the USDA determined that disqualifying Ratsamy's store from participating in the SNAP program would cause hardship to the Burmese population in the area and instead assessed a civil monetary

---

[2] In 2008, Congress amended the Food Stamp Act, renaming it the Food and Nutrition Act and renamed the "food stamp program" the "SNAP," but it did not substantively change the statutory provisions at issue in this case.

[3] Among the ineligible food items sold were mostly household items of nominal value including plastic spoons, toothbrushes, toothpaste, toilet tissue, aluminum foil, and a scrub sponge.  The total value of the ineligible goods was $66.00.

penalty in accordance with the formula set forth in 7 C.F.R. § 278.6(g)[4] in the amount of $27,300.00.  Id. at 83.

Ratsamy's counsel requested an administrative review of the imposition of the $27,300.00 penalty arguing that "the penalty sought to be imposed in this case is clearly out of proportion to the offense."  Id. at 103.  On February 24, 2010, the USDA issued its Final Agency Decision affirming the decision and upholding the amount of the civil monetary penalty.  Id. at 114, 115-121.

On March 26, 2010, Ratsamy filed suit seeking judicial review of the USDA's decision to impose the civil monetary penalty.  Both parties moved for summary judgment.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[4] The formula is as follows:

> (1) Determine the firm's average monthly redemptions of coupons for the 12-month period ending with the month immediately preceding that month during which the firm was charged with violations.
>
> (2) Multiply the average monthly redemption figure by 10 percent.
>
> (3) Multiply the product arrived at in paragraph (g)(2) by the number of months for which the firm would have been disqualified under paragraph (e) of this section.  The civil money penalty may not exceed an amount specified in § 3.91(b)(3)(i) of this title for each violation.

7 C.F.R. § 278.6(g).

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Eighth Amendment Violation**

Ratsamy's lone argument[5] is that the civil monetary penalty is excessive and disproportionate to the wrongdoing, in violation of the Excessive Fines Clause of the Eighth Amendment.  The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

A monetary assessment imposed as punishment is a "fine" within the meaning of the Excessive Fines Clause.  United States v. Bajakajian, 524 U.S. 321, 327-34 (1998).  The government asserts that it has found no case in which a court has held that the civil monetary penalty at issue here constitutes a "fine" for purposes of the Eighth Amendment.  This question

---

[5] While the government briefed additional issues, namely, whether the civil monetary penalty runs afoul of the Due Process clause or the Administrative Procedures Act, Plaintiffs' brief focuses entirely on the Eighth Amendment, framing the issue solely as whether the penalty constitutes an excessive fine.  In addition, at oral argument, counsel for Plaintiffs focused his challenge on the Eighth Amendment argument only.

need not be decided because even assuming the civil monetary penalty in this case constitutes a "fine" for purposes of the Eighth Amendment, it is not excessive. A fine is unconstitutionally excessive it if is "grossly disproportional to the gravity of the defendant's offense." Id. at 334.

Ratsamy relies solely on Bajakajian to argue that the civil monetary penalty is unconstitutional. In Bajakajian, the defendant pleaded guilty to failing to report that he was transporting more than $10,000 in currency out of the country. Id. at 324-25. The Supreme Court held that the forfeiture of the entire amount of the currency - $357,144 - was grossly disproportionate to the gravity of the offense. Id. at 337-338.

In making this determination, however, the Supreme Court cautioned "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that judicial determination regarding the gravity of an offense "will be inherently imprecise." Id. at 336. The goal of the SNAP program is to safeguard the health and well being of the nation's population by raising levels of nutrition among low income households. 7 U.S.C. § 2011. Congress originally prescribed harsh penalties for violations, including permanent disqualification from the program. Since the program's inception, Congress has amended the penalty provisions to make them more severe in order to deter fraud and prevent trafficking activity hoping to maintain the integrity of the program. S. Rep. No. 97-504 at 63 (adopting several provisions "designed to increase penalties for retail stores which violate the Food Stamp Act" and stating that their purpose is "deterrence for those stores which might be inclined to violate the law."). Indeed, in 2008, Congress specifically amended the civil monetary penalty and increased the maximum possible penalty from $10,000 per violation to $100,000 per violation. This evinces Congress' belief that violations are considered serious offenses. Thus,

the maximum statutory penalty is a proper consideration of whether an assessment is excessive. In this case, the penalty assessed is below the $66,000 maximum statutory penalty that could have been assessed had Ratsamy's food stamps redemptions been higher and far below the $600,000 maximum statutory penalty that is currently in effect.[6]

Ratsamy urges the Court to compare the amount of the penalty to the value of the ineligible goods sold during the six violations, which total approximately $66.00. But this is a false comparison; the formula for calculating the civil monetary penalty is related to a store's SNAP redemptions, not the value of the ineligible goods sold or the number of violations. The size of the penalty here is driven by the high volume of SNAP business done by 88 Oriental Foods (88 Oriental Foods' cumulative redemptions for the 12-month period preceding the issuance of the Charge Letter exceeded a half-million dollars).

In addition, the civil monetary penalty is designed to bring participating stores into compliance and to deter stores from violating the law. As one court aptly noted,

> Nowhere in the Senate Report is it suggested that the penalty be made to reflect the amount involved in the violation. As the amount involved in the sale of ineligible goods is often small, a civil money penalty which is made proportionate to that amount is unlikely to have the kind of deterrent effect that the Senate intended.

Objio v. United States, 113 F. Supp. 2d 204, 210. This case is illustrative of the Objio court's reasoning. The value of the ineligible goods involved here is only $66.00. The penalty must be sufficiently severe so that the retailer ceases the illegal activity rather than making the economic decision to simply pay the penalty yet continue violating the regulations. Indeed, calculating the

---

[6] While the current maximum fine is $100,000 per violation, the USDA regulations have not incorporated Congress' increase, so the maximum fine in this case is $11,000 per violation.

penalty in accordance with the formula set forth in 7 C.F.R. § 278.6(g) and not considering the value of the ineligible goods sold in that calculation is consistent with the intent of Congress. Courts have routinely upheld civil monetary penalties calculated in accordance with the regulations. See Vasudeva v. United States, 214 F.3d 1155, 1161-62 (9th Cir. 2000) (upholding penalties of $13,200 and $39,840 for trafficking in food stamps); Traficanti v. United States, 227 F.3d 170, 177 (upholding $40,000 transfer penalty); Objio, 113 F.Supp. 209-11 (upholding a transfer penalty of $15,000 where the value of the goods was $280).

Next, in Bajakajian, the Supreme Court noted that the defendant did not fit into the class of persons for whom the forfeiture statute was principally designed - money launderers, drug traffickers, and tax evaders. Bajakajian, 524 U.S. at 337-38. The civil monetary penalty at issue in this case targets those who violate SNAP's regulations. Ratsamy's store violated SNAP on at least six occasions by selling ineligible items and therefore falls squarely among the class of persons targeted by the statute.

Moreover, in Bajakajian, the Supreme Court recognized that the crime at issue was "solely a reporting offense" and stated that transporting the currency out of the country was lawful as long as it was reported and unrelated to any other illegal activity. Id. at 337. It therefore considered the harm to be minimal, affecting the Government "in a relatively minor way," with "no fraud on the United States" and "no loss to the public fisc." Id. at 339. By contrast, Ratsamy's actions harmed the government, in the form of monetary damages (albeit small) and harm to the integrity of the food stamp program. As stated previously, 88 Oriental Foods sold ineligible items on at least six occasions during a six-month period. Acceptance of ineligible items for food stamps is a serious violation that defrauds the government. Fraudulent

claims make the administration of the food stamp program more difficult, and widespread fraud undermines public confidence in the government. See S. Rep. No. 99-345, at 2-3 (noting ubiquitous fraud in government programs and the inherent difficulties in deterring fraud).

Finally and significantly, Ratsamy could have elected temporary disqualification from the SNAP instead of the civil monetary penalty. Presumably, the financial consequences of a temporary disqualification were greater to Ratsamy than the civil monetary penalty. Having chosen the monetary penalty in lieu of a temporary disqualification, Ratsamy cannot now be heard to complain that his choice is unconstitutional. See Vasudeva, 214 F. 3d at 1161-62.

Considering the relevant factors above renders inevitable the conclusion that, while severe, the penalty imposed here is not constitutionally excessive. Accordingly, there is no Eighth Amendment violation and Plaintiffs' motion for summary judgment is denied and the Defendants' motion is granted.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion [Docket No. 17] is **DENIED** and Defendants' Motion [Docket No. 9] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 21, 2011.